UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G2 ENTERPRISES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05 C 5803 |
| VICTOR NEE, NEEONIX, INC. a/k/a NEEONIX, LTD., an Indiana corporation, | ) Judge John W. Darrah |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, G2 Enterprises, LLC ("G2E"), filed suit, alleging breach of contract and rights of rescission. Defendant, Victor Nee, raised compulsory counterclaims of breach of contract and misrepresentation. Presently before the Court is G2E's Motion for Summary Judgment.

## BACKGROUND

G2E is a California limited liability company located in Los Angeles County, California. (Plaint.'s 56.1(a)(3) Statement ¶ 1). Jeffrey Galant and Sebastian Grande are G2E's only members. (Galant and Grande Affidavit). Neeonix is an Indiana corporation that was administratively dissolved on July 31, 1989. (Plaint.'s 56.1(a)(3) Statement ¶ 3). Victor Nee owns Neeonix. (Id., ¶ 69).

On July 16, 2003, a "Memorandum of Understanding" ("MOU") was drafted. The MOU "summarizes the understanding of [Nee and G2E] to enter into a formal agreement regarding their relationship." The MOU stated that Nee made G2E aware of an opportunity to become the exclusive worldwide selling agent of China Commodities Exchange Co., Ltd. ("CCE") and that G2E intended to form a new entity – NEWCO – to "exploit" the opportunity. The MOU also provided that if no

agreement was reached between CCE and NEWCO, neither party would have any obligation or liability to the other. (Def.'s 56.1(b)(3) Statement ¶ 2; Def.'s Exh. 8).

On August 5, 2003, G2E and Neeonix entered into a written contract. (Plaint.'s 56.1(a)(3) Statement ¶¶ 6-8). The contract provided that it was governed and construed according to California law. (Id., ¶ 47). In the contract, G2E agreed to pay $300,000 to purchase 0.15 percent of equity in CCE, and 0.99 percent equity in China Credit Insurance and Reinsurance, Ltd. ("CCIR"). (Id., ¶ 10). The contract required G2E to "pay or upon the direction of Neeonix via wire transfer the amount of three hundred thousand US dollars (US$300,000) no later than August 8, 2003." (Id., ¶ 10). In accordance with the contract, G2E paid $300,000 by wire transfer to CCE before August 8, 2003. (Id., ¶ 11; Plaint.'s 56.1(b)(3) Statement ¶ 15 ). In the contract, Neeonix represented and warranted that it had the right to purchase equity in CCE and CCIR and to enter into and perform its obligations under the contract. (Plaint.'s 56.1(a)(3) Statement ¶¶ 35, 41). The contract required Neeonix to return the $300,000 to G2E within ten days after demand from G2E if the representations and guarantees made by Neeonix were not true and correct as of the date of the contract. (Id., ¶ 44).

In the contract, Neeonix agreed to provide G2E with documents providing proof of Neeonix's ownership of the CCE and CCIR equity free from any liens within thirty days of August 5, 2003. (Plaint.'s 56.1(a)(3) Statement ¶ 12). Neither Neeonix nor Nee provided G2E with documents providing proof of Neeonix's ownership of the CCE and CCIR equity free from any liens at any time. (Id., ¶¶ 13-18).

2

The contract also required Neeonix to provide proof of its transfer of CCE and CCIR equity to G2E within sixty days of August 5, 2003. (Plaint.'s 56.1(a)(3) Statement ¶ 19). Neither Neeonix nor Nee provided proof of its transfer of CCE and CCIR equity to G2E within sixty days of August 5, 2003. (Id., ¶¶ 20-21).

The contract required Neeonix to purchase 0.3 percent of CCE equity and to transfer 0.15 percent of CCE equity to G2E. (Plaint.'s 56.1(a)(3) Statement ¶ 22). Neither Neeonix nor Nee ever transferred or delivered 0.15 percent of CCE equity to G2E. (Id., ¶¶ 23-24). The contract also required Neeonix to purchase 1.98 percent of CCIR equity and to transfer 0.99 percent of CCIR equity to G2E. (Id., ¶ 25). Neither Neeonix nor Nee ever transferred or delivered 0.99 percent of CCIR equity to G2E. (Id., ¶¶ 26-27). Neeonix also promised to secure a $600,000 line of credit for G2E and to provide a document confirming that G2E had been granted a $600,000 line of credit for the purpose of purchasing goods from CCE. (Id., ¶¶ 28, 31). Neither Neeonix nor Nee ever secured the $600,000 line of credit nor provided a document confirming that G2E had been granted a $600,000 line of credit to purchase goods from CCE. (Id., ¶¶ 29-30, 32-33).

The contract provided that Neeonix's failure to provide proof of their ownership of the CCE and CCIR equity free from any liens, proof of their purchase of the CCE and CCIR equity to G2E, and/or a document confirming that G2E received a $600,000 line of credit to purchase goods from CCE made the contract void and required Neeonix to immediately refund the $300,000 to G2E. (Plaint.'s 56.1(a)(3) Statement ¶ 34).

On August 18, 2003, G2E and CCE entered in the "CCE-CCEI Points of Understanding" ("POU"). The unsigned POU states that China Commodity Exchange International ("CCEI") would "set up for CCE and [G2E]" and sets forth CCEI's responsibilities and obligations. (Def.'s

56.1(b)(3) Statement ¶ 4; Plaint.'s Response ¶ 4). As part of establishing CCEI, G2E attempted to establish CCEI in China, including office space. (Id., ¶ 5).

In October 2003, although an office in China had not yet been established, G2E began to represent themselves as the exclusive representative of CCE. (Def.'s 56.1(b)(3) Statement ¶ 8). That same month, G2E and CCE mutually decided not to work on the basis set forth in the POU. (Id., ¶¶ 11-12)

As of January 31, 2006, Neeonix was still administratively dissolved. (Plaint.'s 56.1(a)(3) Statement ¶ 37). As of February 3, 2006, Neeonix had never applied for reinstatement under the Indiana Code. (Id., ¶ 38). Neeonix never wound up its affairs and has no insurance or business license. (Id., ¶¶ 71-73). G2E has demanded the return of the $300,000 from Neeonix, but it has not been returned. (Id., ¶¶ 45-46).

There is no filing related to CCE and CCIR in the State of California. (Plaint.'s 56.1(a)(3) Statement ¶ 54). Neither Neeonix nor Nee have ever held or applied for a broker-dealer certificate from the Commissioner of Corporations in California. (Id., ¶¶ 55-56). Neither Neeonix nor Nee have ever held a license or a certificate issued by the California Department of Corporations. (Id., ¶¶ 58-64). The California Department of Corporations has no record of any filing on behalf of CCE or CCIR under the Corporate Securities Act of 1968. (Id., ¶¶ 78-79).

Nee is the lone officer, director, shareholder, and agent for service of process of Neeonix. (Plaint.'s 56.1(a)(3) Statement ¶ 70). Nee was involved with the discussions relating to the contract between G2E and Neeonix. (Id., ¶ 70). Nee told Galant and Grande that G2E would receive securities in CCE and CCIR and would further benefit through price discounts on CCE goods and a $600,000 line of credit to buy goods from CCE. (Id., ¶ 77).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

To prevail on a breach of contract claim, G2E must demonstrate: (1) the existence of a contract, (2) performance by G2E or excuse for nonperformance, (3) breach by the Defendant[s], and (4) damages. *See First Commercial Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

The undisputed facts demonstrate the existence of the August 5, 2003 contract; performance by G2E; Neeonix's nonperformance under the contract – including failing to provide documentation providing proof of Neeonix's ownership of the CCE and CCIR equity free from any liens within thirty days of August 5, 2003, failing to provide proof of Neeonix's transfer of CCE and CCIR equity to G2E within sixty days of August 5, 2003, failing to transfer or deliver the required percentage of CCE and CCIR to G2E, and failing to provide proof or documentation confirming that G2E received a $600,000 line of credit to purchase goods from CCE; and damages to G2E.

Defendants attempt to avoid summary judgment on the breach of contract claim, arguing that "circumstances and events that arose both prior to and after" the contract at issue must be examined in order to determine if all of the elements of a breach of contract claim are met. For example, Defendants argue that G2E failed to establish an office in China. However, the August 5, 2003 contract does not require G2E to establish an office in China. Defendants have not identified any requirement contained in the contract that G2E was required to perform but had not performed. There is no evidence that the prior or post contract "agreements" and "understandings" were incorporated into, or amended, the contract at issue nor that any subsequent contract was created.

Furthermore, the August 5, 2003 contract provided that Neeonix represented and warranted that it had the right to purchase equity in CCE and CCIR and to enter into and perform its obligations under the contract. The contract required Neeonix to return the $300,000 to G2E within ten days after demand from G2E if the representations and guarantees made by Neeonix were not true and correct as of the date of the contract. These representations and guarantees were not true and correct because Neeonix was administratively dissolved at the time of the contract, and remains administratively dissolved. *See* Ind. Code § 23-1-46-1 ("an administratively dissolved corporation continues to exist as a corporation but may not carry on business except that necessary to wind up and liquidate . . . ."). G2E demanded the return of the $300,000, to no avail.

Based on the above, no genuine issue of material fact exists as to Neeonix's breach of the August 5, 2003 contract.

G2E also seeks rescission of the contract. Pursuant to California law, a party may rescind a contract if the consent of the party rescinding the contract was given by mistake or obtained

through duress, menace, fraud, or undue influence, by the party as to whom the contract is to be rescinded. Cal. Civil Code § 1689(b)(1).

In the instant case, at the time of contracting, Neeonix, through Nee, falsely represented that Neeonix had the corporate power and authority to enter into and perform its obligations under the contract. As discussed above, these representations were false because Neeonix had been administratively dissolved at the time of contracting and Nee knew of the dissolution. Accordingly, G2E may rescind the contract pursuant to Cal. Civil Code § 1689(b)(1).

G2E also seeks to rescind the contract for Neeonix's violations of the California Corporations Code by the unlawful sale of "securities."

Pursuant to California law, it is unlawful for someone to sell a security unless they have obtained a broker-dealer certificate from the California Commissioner of Corporations. *See Cal. Corp. Code* §§ 25005, 25501.5. The purchaser of a security from an unlicensed broker-dealer is entitled to rescission. *See Cal. Corp. Code* § 25501.5(a).

Whether a particular instrument is a security is made "on an *ad hoc* basis upon a review of the surrounding facts and circumstances and in light of the regulator purposes to be served . . . ." *California v. Schock*, 152 Cal. App. 3d 379, 385 (1984) *(Schock)*. Generally, California courts determine if an instrument is a security under the "risk-capital" test found in *Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811 (1961), and/or the "Howey test" found in *S.E.C. v. Howey Co.*, 328 U.S. 293 (1946). *See Schock*, 152 Cal. App. 3d at 385-87.

Under the "risk-capital" test, a security "involves an attempt by an issuer to raise funds for a business venture or enterprise; an indiscriminate offering to the public at large where the persons solicited are selected at random; a passive position on the part of the investor; and the conduct of the

enterprise by the issuer with other people's money." *Silvers Hills*, 55 Cal. 2d at 814-15. Here, there is no evidence that there was an indiscriminate offering to the public at large to randomly selected persons and, based on G2E's active participation in CCE and CCIR, genuine issues of material fact exist as to whether the contract involved the sale or transfer of a security under the "risk-capital" test.

Under the "Howey test," the test for distinguishng a security from some other type of commercial dealing is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Howey*, 328 U.S. at 301. As in the "risk-capital" test, based on G2E's active participation in CCE and CCIR, genuine issues of material fact exist as to whether the contract involved the sale or transfer of a security under the "Howey test."

Lastly, G2E seeks to hold Nee liable as Neeonix's alter ego.

Whether the corporate veil is to be pierced depends "on the circumstances of each particular case." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). However, two general requirements exist: "(1) there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an equitable result will follow." *Automotriz etc. de California v. Resnick*, 47 Cal. 2d 792, 796 (1957).

The undisputed facts establish that Nee: (1) is the lone officer, director, shareholder, and agent for service of process of Neeonix; (2) was the sole individual of Neeonix involved in the discussions leading to the August 5, 2003 contract; (3) did not establish insurance or a business license for Neeonix and; (4) has not wound up the affairs of Neeonix after its administrative dissolution. G2E attempts to further demonstrate that Nee and Neeonix are essentially one in its

reply brief with multiple "facts" pertaining to Nee and Neeonix. However, G2E cannot present new arguments or "facts" in its reply. *See United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004).

Based on the undisputed facts, it cannot be concluded that no reasonable jury could return a verdict in favor of Nee as to the piercing-the-corporate-veil claim. Accordingly, summary judgment is denied as to Nee's being liable as Neeonix's alter ego.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is granted in part and denied in part. Summary judgment is granted in Plaintiff's favor as to Plaintiff's breach of contract claim (Count I). Summary judgment is denied as to all other counts.

Dated: October 28, 2006

JOHN W. DARRAH
United States District Court Judge